Carl S. HURST, Individually, and Carl S. Hurst, as an Employee and/or Agent of Miller Transporters, Inc., and Miller Transporters, Inc.
*v.* Willie B. DIXON

03-669                                                     182 S.W.3d 102

Supreme Court of Arkansas
Opinion delivered May 20, 2004

[Rehearing denied June 24, 2004.]

*Howell, Trice, Hope & Files, P.A.*, by: *Jason D. Files*, for appellant.

*Wilson Law Firm, P.A.*, by: *E. Dion Wilson*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellants Carl S. Hurst and Miller Transporters, Inc., appeal from a circuit court's order denying a setoff or credit under the Mississippi Insurance Guaranty Association Law ("MIGA"), codified at Miss. Code Ann. § 83-23-101 *et seq.* (1999), for sums paid to Appellee Willie Dixon by his own insurance carrier and by his employer's workers' compensa-

tion carrier. We accepted certification of this case from the Arkansas Court of Appeals as a matter of first impression regarding interpretation of MIGA. We find no error and affirm.

On January 3, 2002, Appellee Willie B. Dixon was traveling northbound on United States Highway 49 in West Helena when he was rear-ended by an International Fleet tractor trailer owned by Miller Transporters, Inc., and operated by Carl S. Hurst (collectively "Appellants"). Mr. Dixon subsequently filed a complaint against Appellants in the Phillips County Circuit Court. During the pendency of the suit, Appellants' liability insurer, Reliance Insurance Company, was declared insolvent, and the Commonwealth Court of Pennsylvania issued an order of liquidation.

On November 19, 2001, Appellants requested a ninety-day stay pursuant to the Pennsylvania liquidation order and principles of comity. In an amended answer filed on May 14, 2002, Appellants affirmatively pled entitlement under MIGA to a setoff or credit against any judgment rendered against them in an amount equal to the total of all benefits paid to Mr. Dixon by his employer's workers' compensation carrier and by his own insurance carrier, Southern Farm Bureau Casualty Insurance Company ("Southern Farm Bureau"). Two days later, on May 16, 2002, the circuit court conducted a hearing concerning the insolvency of Appellants' insurer, Reliance Insurance Company. In anticipation of a claim under MIGA, the circuit court ordered Mr. Dixon to exhaust any and all rights that he might have under other insurance coverage or policy benefits. He had already collected medical benefits in the amount of $2,859.42 from Southern Farm Bureau and workers' compensation benefits in the amount of $5,956.64. Because the insolvency of Appellants' insurer made Mr. Dixon eligible for uninsured-motorist benefits from his own insurance carrier, Southern Farm Bureau, he filed a second amended complaint on June 6, 2002, that joined Southern Farm Bureau as a party to the lawsuit. Shortly thereafter, Southern Farm Bureau settled with Mr. Dixon for the full amount of the policy limits, $25,000, and Mr. Dixon released Southern Farm Bureau.

Appellants eventually conceded liability and, on November 26, 2002, the case proceeded to jury trial on the issue of damages. The jury returned a verdict in favor of Mr. Dixon, finding as follows:

> We, the jury, find for the plaintiff, Willie B. Dixon, and against the defendants, Miller Transporters, Inc. and Carl S. Hurst, and fix his damages in the sum of $50,000.

Appellants then reasserted their request for a setoff or credit pursuant to MIGA. At the time, Mr. Dixon had collected a total of $44,914.21: $25,000 paid under the uninsured-motorist provision of the Southern Farm Bureau policy; $13,777.57 paid under the collision, disability, and medical payments provisions of the Southern Farm Bureau policy; and $6,136.64 in workers' compensation benefits. The circuit court ordered the parties to submit briefs on the setoff issue.[1] They were advised that a hearing would be scheduled on the matter. However, on January 7, 2003, a judgment for $50,000 was entered against Appellants without a hearing.

On January 15, 2003, Appellants filed a motion to vacate, alter, or otherwise amend the judgment to take into consideration the issue of setoff or credit. Mr. Dixon filed a response on January 17, 2003, acknowledging that the circuit court failed to rule on the setoff issue and that "neither plaintiff nor his attorney takes the judgment on January 7, 2003, as being [decisive on the issue of] whether the defendant is entitled to a reduction in judgment." The circuit court then held a hearing on February 12, 2003. Thereafter, on February 18, 2003, the court entered an order denying Appellants' claim for a setoff or credit. The circuit court found that the Mississippi Insurance Guaranty Association ("the Association") had not entered an appearance in the case and that, therefore, it had no standing to ask for relief from the court. The court also found that because the jury rendered a general verdict, the court was unable to determine whether "the plaintiff is receiving double recovery."

On March 4, 2003, Appellants filed a second motion to vacate, alter, or amend the judgment, or in the alternative for a new trial. In that motion, Appellants asserted for the first time that they were entitled to a setoff under the Arkansas Uniform Contribution Among Tortfeasors Act, codified at Ark. Code Ann. § 16-601-201 *et seq.* (1987), based on Mr. Dixon having settled his

---

[1] In their posttrial brief, Appellants asserted that the Mississippi Insurance Guaranty Association was entitled to the statutory setoff or credit under MIGA for amounts paid by other insurers to Mr. Dixon, and that the credit should also inure to the benefit of Appellants, as the alleged tortfeasors insured by a defunct insurer.

claim against Southern Farm Bureau. The motion alternatively asked the court for a new trial so that Appellants could present evidence to the jury of the amounts previously received by Mr. Dixon, which in turn might reduce the jury's award. The circuit court did not rule on Appellants' second motion to vacate. This appeal followed, with Appellants filing their notice of appeal on March 13, 2003.

The critical issue here is whether, under the facts and circumstances of this case, Appellants are entitled to a setoff or credit under the provisions of MIGA.[2] The circuit court determined that because the Association was not a party and had not otherwise entered an appearance in the case, it could not claim a setoff or credit under MIGA. In other words, the court ruled that the Appellants were not entitled to assert the claim for a setoff or credit on behalf of the Association. On appeal, Appellants contend that the circuit court erred because they are entitled to get the benefit of the setoff or credit under MIGA independent of the Association's right to the setoff or credit under MIGA. The pertinent section of the Mississippi statute provides as follows:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under such policy. *Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery under such insurance policy.*

Miss. Code Ann. § 83-23-123(1) (1999) (emphasis added). The statute further defines a "covered claim" as:

> [A]n unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer and (1) the claimant or insured is a resident of this state at the time of the insured event, provided that for entities other than an

---

[2] Because Appellant Miller Transporters, Inc., is a Mississippi corporation with its principal place of business located in Jackson, Mississippi, Appellants assert that the Mississippi Insurance Guaranty Association is the appropriate fund, not its Arkansas counterpart under the Arkansas Property and Casualty Insurance Guaranty Act. *See* Ark. Code Ann. § 23-90-101 *et seq.* (Repl. 2004).

individual, the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state. "Covered claim" shall not include any amount awarded as punitive or exemplary damages; or sought as a return of premium under any retrospective rating plan; or due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise and shall preclude recovery thereof from the insured of any insolvent carrier to the extent of the policy limits.

Miss. Code Ann. § 83-23-109 (1999).

Appellants cite *Winter v. F.A. Richard & Associates, Inc.,* 665 So.2d 611 (La.App. 5 Cir. 1995), for the proposition that they have standing, independent of the Association, to assert a right to a setoff. In that case, however, the Louisiana Insurance Guaranty Association was a named defendant in the action. *Id.* The Louisiana court explained that one of the policies enunciated by the guaranty act was to protect policyholders of defunct insurers from loss. *Id.* Thus, the policyholder was entitled to the same setoff as had been requested by the Louisiana Guaranty Association. *Id.*

In this case, the Mississippi Insurance Guaranty Association was not a named party seeking a setoff. We recognize, however, that other jurisdictions have held that an insured is entitled to the protections of the pertinent guaranty act where the guaranty association is not a party to the action. In *Lonigro v. Lockett,* 253 Ill. App. 3d 308, 625 N.E.2d 265 (1993), the Illinois appellate court held that an insured had standing to argue for a setoff when the Illinois Insurance Guaranty Fund undertook the defense of the insured. Likewise, in *Proios v. Bokeir,* 72 Wash.App. 193, 863 P.2d 1363 (1993), the relevant guaranty association took over the insolvent insurer's obligation to defend and indemnify the insured.

■ It is undisputed that the Mississippi Insurance Guaranty Association is not a party to this action. Furthermore, there is nothing in the record to reflect that the Association has agreed to undertake the defense of Appellants. There is no entry of appearance by the Association; nor has the Association indicated to the court or the other parties, either through pleadings or correspondence, that it has assumed the insolvent insurer's obligation to defend and indemnify Appellants. Under MIGA, the right to a setoff is conditioned upon there being a "covered claim," and any setoff is limited to coverage previously provided by the insolvent

insurer. *See* Miss. Code Ann. §§ 83-23-109, 123. Based on the record in this case, neither the circuit court nor this court has any way of determining whether the claim arising from Mr. Dixon's injuries is a "covered claim" under MIGA; that is, whether his claim "arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer . . . ." Miss. Code Ann. § 83-23-109 (1999). Consequently, we cannot say that the circuit court erred in refusing to grant Appellants a setoff under MIGA.

Appellants also argue that if the judgment is not reduced, Mr. Dixon will receive a double recovery. This argument is premised upon Appellants' assertion that the Association has assumed coverage, and, thus, any right to subrogation by Dixon's other insurers has been eliminated. In view of our conclusion that Appellants have not shown whether there is a "covered claim" under MIGA, the status of the other insurers' subrogation rights must likewise remain unresolved. Accordingly, we do not address the issue of double recovery.

■ For their final two points on appeal, Appellants contend they are entitled to a setoff pursuant to the Arkansas Uniform Contribution Among Tortfeasors Act, codified at Ark. Code Ann. § 16-61-201 *et seq.*, or, in the alternative, a new trial to present evidence of previous payments made to Mr. Dixon. Both of these points were made in a second motion to vacate filed by Appellants on March 4, 2003. That motion was never ruled on by the circuit court. In addition, the motion was not deemed denied by operation of law as it was filed more than ten days after entry of judgment on January 7, 2003. *See* Ark. R. App. P.—Civ. 4(b)(1) (2003). Accordingly, there is no ruling by the circuit court from which to appeal. It is well settled that a party's failure to obtain a ruling is a procedural bar to this court's consideration of the issue on appeal. *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2002).

Affirmed.

THORNTON, J., concurs.

RAY THORNTON, Justice, concurring. I write to emphasize my concern that this case should not be interpreted to allow a plaintiff to receive a double recovery under the Arkansas Insurance Guarantee Act. I agree that there is insufficient evidence in

the record before us to determine whether it involves a "covered claim" under the Mississippi Insurance Guarantee Act, Miss. Code Ann. § 83-23-101 *et seq.* (1999) ("MIGA"), and whether the jury award is a double recovery absent a set-off of the amount already collected from various sources.

Double recovery is abhorrent to our laws. *See Douglas v. Adams Trucking Co., Inc.*, 345 Ark. 203, 46 S.W.3d 512 (2001). While there is a need for individuals to be compensated for a loss, there should not be a recovery greater than the loss. This case should not establish a precedent of allowing double recovery of damages under the Arkansas Property and Casualty Insurance Guarantee Act, Ark. Code Ann. § 23-90-101 *et seq.* (Repl. 2004), because of linguistic similarities to MIGA. I believe that the *dicta* in *Young v. Bailey*, 294 Ark. 300, 742 S.W.2d 905 (1988), adequately highlights the problem faced in this case. "Had the case been submitted on interrogatories specifying the damages awarded," the question of what portion of the award coincided with an amount already paid by the insured "might have been avoided." *Id.* In this case, the jury returned a general verdict while there was a previous insurance payment to appellee. Had there been a specific verdict, the question of whether the damages awarded by the jury were meant to include or supplement the amount appellee already received from insurance would have been determined.

For the foregoing reasons, I concur.